**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARLOS COLON, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:20-1977 |
| v. | : | (JUDGE MANNION) |
| DR. PEPPERS, et al., | : | |
| Defendants | : | |

**MEMORANDUM**

**I. BACKGROUND**

Plaintiff, Carlos Colon, an inmate formerly confined at the Smithfield State Correctional Institution ("SCI-Smithfield"), Huntingdon, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983.[1] (Doc. 1). The named Defendants are John Wetzel, Department of Corrections (DOC) Secretary; James Luther, SCI-Smithfield Superintendent; Dr. Peppers and Dr. Gartner, DOC Dentists; Dental Assistants Sherry and Michelle, Correctional Officers Myers and Dively and Mr. Dreibelbus, Health Care Administrator. Id. Plaintiff alleges a "denial of medical needs and

---

[1] Plaintiff is currently housed in the Rockview State Correctional Institution, Bellefonte, Pennsylvania.

services by all named Defendants" when an unauthorized dental procedure was performed on his mouth, resulting in lasting injuries. Id. For relief, he seeks compensatory and punitive damages of "$50,000 against each" Defendant. Id.

Presently before the Court is Defendants' motion to dismiss. (Doc. 15). The motion is fully briefed and is ripe for disposition. For the reasons set forth below, the Court will grant Defendants' motion to dismiss.

**II. FACTUAL ALLEGATIONS IN THE COMPLAINT**

On February 25, 2019, Plaintiff filed Grievance No. 788559-19 complaining of "malpractice and negligence by dentist causing infection and permanent nerve damage and chronic physical pain." (Doc. 1 at 23, Official Inmate Grievance). Specifically, he claims that "on 2-11-19, [he] was summoned to the dentist for unrequested surgical removal of wisdom teeth" and that he "did not have any dental issues needing service", but was "told [his] wisdom teethe needed extraction." Id. Plaintiff claims that the procedure was conducted in such a negligent manner that two weeks after the surgery, he "continues suffering chronic physical pain, permanent numbness in [his] lip-chin-cheek-lower jaw, swelling, infection and nose bleeds" and he "can barely open [his] mouth due to the swelling and infection." Id.

On February 25, 2019, Grievance No. 788559-19 was denied as follows:

Inmate Colon alleges malpractice and negligence by dentist causing infection and permanent nerve damage as well as chronic physical pain. He states that he was seen in the dental clinic on 2-11-19 for the surgical removal of his wisdom teeth. He states that he had to use his own hands to help hold his jaw while the dentist pulled his teeth. He was told not to worry about the tearing sounds he heard in his mouth. He states the assistant hit the nerve on the top of his mouth on the left side. The Dentist stated that he would leave a piece of tooth in to prevent further damage. Later than evening his nose bled and his left jaw line was completely numb, his request for a soft diet was denied. He states he went to medical on 2-12-19 and complained about his nose bleeding and jaw numbness. He again came to the medical department on 2-13-19 after complaining of a nosebleed, numbness, and chronic pain with swelling. He states his Aunt called Mr. Dreibelbus and the dentist just looked at his teeth. The dentist told him that he was doing well. On 2-14-19 inmate Colon returned to the dental clinic because he felt the tooth rubbing his cheek. He states his Aunt called Mr. Dreibelbus and he again was seen in the dental clinic. He was given a soft diet without addressing the chronic pain, swelling and numbness. Again, on 2/15/19 his family called the institution and was told everything would be taken care of, yet nothing changed. Inmate Colon went to the dental clinic on 2-19-19, was given x-rays, antibiotics, ibuprofen and was told he would be seen again on 3-19-19. He states as of 2-25-19 he still has chronic pain, permanent numbness, swelling and infections. He states that he can barely open his mouth. He is seeking monetary damages and to be sent to a specialist to correct the malpractice of the SCI-Smithfield dental staff. He also wants several staff all interviewed and he wants to be personally interviewed.

I reviewed inmate Colon's medical record and discussed this grievance with Dr. Ehgartner and CHCA Drelbelbis. Dr. Ehgartner has documented that Inmate Colon presented in the dental clinic 11/21/18 and wanted to have his wisdom teeth

removed. At that time inmate Colon was informed of procedure and all the complications such as tooth fragments, jaw numbness, bleeding, and possible infection as well as pain. Inmate Colon wished to have the surgery scheduled. On 2/11/19, Dr. Peppers removed inmate Colon's wisdom teeth and inmate Colon was given Motrin for pain, antibiotics, and mouth-rinse. Inmate Colon was seen in the clinic on 2/12 and 2/13 and stated that nose bleeds had stopped, his lip and gum was still numb. Inmate's sinus was check and mouth was healing. 2/14/19 Inmate Colon again was in the dental clinic complaining about a piece of tooth stuck in his gums and his lower teeth were loose with pain. Inmate Colon had been grinding his teeth and all his teeth were checked. Inmate Colon had full range of motion of his jaw. 2/19/19 inmate Colon in clinic again and reported that swelling is better, but lip is still numb. Inmate Colon was informed that it might remain numb for some time yet. Instructed to keep taking the Motrin, antibiotics, and mouth rinses. Inmate Colon followed upon on 3/6/19 with some facial swelling and drainage from lower left surgical site. X-rays performed and showed retained root as explained by the oral surgeon on the date of the surgical procedure. Dr. Ehgartner did a bite adjustment and inmate Colon stated that his bite felt a lot better. Inmate Colon was instructed to continue the Motrin, antibiotics, and mouth rinses. Mr. Drelbelbis states that he did talk with inmate Colon's Aunt on two occasions and had inmate Colon evaluated by the dental staff on both occasions. Mr. Drelbelbis and I interviewed inmate Colon on 3/13/19 and discussed this grievance and the treatment of Inmate Colon by the dental department. Dr. Ehgartner will follow up inmate Colon on 3/18/19 to determine if any further treatment is required. I do not see any evidence to support the request for monetary damages. Dr. Ehgartner states that all dental care is appropriate to date and he will follow inmate Colon closely until this situation is resolved.

This grievance is denied.

(Doc. 1 at 25-26, Initial Review Response).

On March 18, 2019, Plaintiff filed an appeal, claiming that the "Grievance Officer's conclusion is based upon falsified medical records" and that he "never requested or consented to the dental procedure received." (Doc. 1 at 27, Appeal). He further claims that the Grievance Officer "never addressed or resolved the issue of the permanent physical injury" or "acknowledged [his] injuries and infection from the surgery." Id.

On April 9, 2019, Colon's appeal was denied as follows:

> I have reviewed your grievance, initial review response and appeal.
>
> The records reflect that RNS Hartman provided you with a compete and thorough response in regard to your issues. There is no evidence of falsified medical records. You presented at the dental clinic on 11/21/18 requesting your wisdom teeth to be removed. The medical records reflect you signed a consent for the dental procedure on 2/11/19 wherein complications of the surgery were discussed. Your wisdom teeth were subsequently removed on 2/11/19. You were seen on 2/12/19, 2/13/19, 2/14/19, 2/19/19 and 3/6/19 for various complaints regarding your teeth and were provided with medical guidance for each. X-rays on 3/6/19 did show a retained root which was explained by the oral surgeon on the date of the surgery. Dr. Ehgartner did a bite adjustment and you stated it felt a lot better. Dr. Ehgartner met with you on 3/18/19 and again on 4/1/19. Mr. Dreibelbus reported that you indicated to him that you were feeling better. Dr. Ehgartner states that all dental care is appropriate, and I must rely on the medical expertise of licensed medical practitioners.
>
> Your grievance appeal and request for relief are denied.

(Doc. 1 at 28, Facility Manager's Appeal Response).

On April 26, 2019, Plaintiff filed a final appeal with the Chief Grievance Officer, challenging the extraction of his wisdom teeth and the negligent manner in which the procedure was performed. (Doc. 1 at 30-31, Final Appeal).

On May 20, 2019, Plaintiff was notified that his appeal was referred to the Bureau of Health Care Services for further investigation. (Doc. 1 at 32). In a Final Appeal Decision, Plaintiff's final appeal was denied as follows:

> A review of the record was conducted by the Bureau of Health Care Services regarding your dental care. Upon reviewing your medical record, it was determined that the pre-operative consent process was properly followed. Regarding the post-operative complications that have been experienced, the Bureau recommends off-site consultations with the Oral and Maxillofacial Surgery Clinic at the Allegheny General Hospital in Pittsburgh for the remaining root tips AND a consultation with a neurosurgeon regarding the lower left lip/chin paresthesia (numbness). Further treatment recommendations will be guided by the recommendations of these specialists. Therefore, your grievance is upheld in part. Your grievance is denied in part because staff will not be suspended, and monetary compensation is not warranted.

(Doc. 1 at 33, Final Appeal Decision).

On October 27, 2020, Plaintiff filed the instant action in which he seeks compensatory and punitive damages the "denial of medical needs and services by all named Defendants." (Doc. 1 at 13-14).

### III. MOTION TO DISMISS

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule

12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

## IV. Discussion

### A. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton

infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment ..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment,

or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the

medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

Assuming that Plaintiff's medical needs were serious in the constitutional sense, the allegations in Plaintiff's complaint and Plaintiff's exhibits clearly demonstrate that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim.

Initially, the Court notes that although Plaintiff alleges in his complaint that the wisdom teeth removal was not a dental procedure requested by Plaintiff, Plaintiff's own exhibit reveals that Plaintiff executed an authorization to perform the extraction. (See Doc. 1 at 30). Thus, Plaintiff's admission averts any deliberate indifference of performing dental work without consent.

Additionally, Plaintiff's own exhibits demonstrate that Plaintiff was treated with anesthesia before the extraction and then prescribed antibiotics and a mouth rinse after the procedure. Plaintiff's complaints subsequent to the extraction were always addressed, as Plaintiff was seen five times after the extraction for various complaints regarding his teeth. Finally, Plaintiff was

then referred for an outside consultation with the Oral and Maxillofacial Surgery Clinic at the Allegheny General Hospital in Pittsburgh for the remaining root tips and a consultation with a neurosurgeon regarding the lower left lip/chin paresthesia.

At best, Plaintiff's complaint demonstrates his disagreement with the type of treatment rendered. This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse. To the extent that record demonstrates that Plaintiff has been referred to an outside oral surgeon for further treatment and care, shows that Defendants continue to be attentive to Plaintiff's situation. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence cannot serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim. See White, 897 F.2d at 108-110.

### B. Corrections Defendants

Plaintiff's Eighth Amendment claim against Secretary Wetzel, Superintendent Luther, Health Care Administrator Dreibelbus and Correctional Officers Myers and Dively is predicated on the theory that they were aware of Plaintiff's medical condition but refused to do anything about it.

Again, "non-medical prison officials are generally justified in relying on the expertise and care of prison medical providers." Spruill, 372 F.3d at 236. Thus, "[i]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Id. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id.

Here, Plaintiff's allegations establish that he was under continuous treatment by the prison's health care providers. For the reasons previously discussed, Plaintiff has failed to allege facts that could plausibly establish deliberate indifference on the part of medical staff members to Plaintiff's serious medical needs. It follows that Plaintiff cannot establish liability

against these Defendants for failing to intervene in Plaintiff's treatment plan and Defendants are entitled to dismissal.

In addition, Plaintiff's claims against Defendant Dreibelbus and Luther are also deficient to the extent they are predicated on their denial of Plaintiff's grievance. A prison official's participation in the grievance processes, including appeals, fails to establish the requisite personal involvement." Brooks v. Beard, 167 Fed.Appx. 923, 925 (3d Cir. 2006) ("Although the complaint alleges that [prison officials] responded inappropriately to [the plaintiff's] later-filed grievances about his medical treatment, these allegations do not establish [the prison officials'] involvement in the treatment itself.").

In sum, Plaintiff has failed to plead a plausible constitutional violation for which Defendants Dreibelbus, and Luther could be liable. Even if he had, their participation in the grievance process would be insufficient to establish their own personal involvement in the alleged wrongdoing. And, because these Defendants are non-medical prison official, they were entitled to rely on the professional judgment of Plaintiff's health care providers. As such, Defendants Dreibelbus and Luther are entitled to dismissal.

## V. LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, it is clear from the facts alleged in the *pro se* complaint that any attempt to amend the plaintiff's §1983 claims against the named Defendants would be futile. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the Court will dismiss the Plaintiff's §1983 claims without leave to amend.

## VI. CONCLUSION

For the reasons set forth above, the Court will grant the Defendants' motion to dismiss. (Doc. 15). A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: May 27, 2021**
20-1977-01